IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | ) Case No.: 1:10-cv-02388 LJO JLT |
| Plaintiff, | ) ORDER GRANTING DEFENDANT ANN ) MARIE CLIFTON'S MOTION TO SET ASIDE |
| v. | ) DEFAULT |
| | ) (Doc. 16) |
| ANN MARIE CLIFTON and SERGIO ANDRADE, individually and doing business as PLAYHOUSE LOUNGE, | ) |
| Defendants. | ) |

Defendant Ann Marie Clifton seeks to have the entry of default set aside by the Court. (Doc. 16). Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed an opposition to the motion on September 9, 2011 (Doc. 22), to which Plaintiff replied on September 20, 2011. (Doc. 24). The Court heard argument regarding the motion on September 27, 2011.

For the following reasons, Defendant's motion to set aside entry of default is **GRANTED**.

## I. Procedural History

On December 27, 2010, Plaintiff filed its complaint against Ann Marie Clifton and Sergio Andrade, individually and doing business as Playhouse Lounge, alleging violations of the Communications Act of 1934 (47 U.S.C. § 605, *et seq.*), the Cable & Television Consumer Protection and Competition Act of 1992 (47 U.S.C. § 533, *et seq.*) and the California Business and

Professions Code § 17200, *et seq*. (Doc. 1 at 3-8). In addition, Plaintiff alleges the defendants are liable for wrongful conversion of property, arising under California State law. *Id.* at 6-7. Plaintiff alleges it possessed the exclusive rights to the nationwide commercial distribution of "Ulitmate Fighting Championship 108: Rashad Evans v. Thiago Silva" ("the Program"), televised on January 2, 2010. *Id.* at 3. Plaintiff's claims are based upon the defendants' alleged unlawful interception and broadcast of the Program.

The defendants failed to respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure. Pursuant to Fed.R.Civ.P. 55(a), default was entered against Sergio Andrade and Ann Marie Clifton on February 13, 2011. (Doc. 9). Plaintiff filed a motion for default judgment on July 14, 2011. (Doc. 12). On August 17, 2011, Ann Marie Clifton appeared and moved to set aside default. (Docs. 14, 18). Plaintiff filed an opposition to the motion to set aside default on September 9, 2011 (Doc. 22), to which Defendant replied on September 20, 2011. (Doc. 24).

**II. Legal Standards**

The Federal Rules of Civil Procedure govern the entry of default. Once default has been entered by the clerk, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In evaluating whether good cause exists, the court may consider "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Mesle*, 614 F.3d 1085, 1091 (9th Cir. 2010) (citing *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)); *see also TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). The standard for good cause "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.*

On the other hand, when the moving party seeks timely relief from default "and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945-46 (9th Cir. 1986), quoting *Schwab v. Bullocks Inc.*, 509 F.2d 353, 355 (9th Cir. 1974).

Moreover, the Ninth Circuit has opined "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

### III.   Discussion and Analysis

####   A.   Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group*, 244 F.3d at 697, quoting *Alan Newman Prods. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (emphasis in original). In addition, actions may be culpable when "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* at 698.

Ms. Clifton asserts her failure to respond was not culpable conduct. (Doc. 17 at 4-5). Ms. Clifton believed "she had not been personally served with the lawsuit and therefore no response would be due until she had been personally served with the litigation." *Id.* at 4. In her declaration, Ms. Clifton explains she sold the establishment to Sergio Andrade on August 10, 2009. (Doc. 18 at 2). In December 2010, she received a letter from Plaintiff's counsel, Mr. Riley, which was addressed to her home and the business. *Id.* Following receipt of the letter, she attempted to contact Mr. Riley on two occasions but was unable to speak with him, and her phone calls were not returned by the law office. *Id.* Ms. Clifton asserts that "approximately mid-April 2011" she received a call from Mr. Andrade's wife that they had documents for her at the bar. (Doc. 18 at 2). She went to pick up the documents, and "was provided a copy of the lawsuit." *Id.*[1] Because Ms. Clifton was not served personally, she did not believe valid service was made and that she would be contacted at a later date. *Id.* Based upon conversations with Ms. Clifton, her attorney, Mr. Noriega, "was of the

---

[1] The Proof of Service states indicates Plaintiff effected substituted service for Clifton by serving Josephine Andrade on March 10, 2011. (Doc. 7 at 1). Attached to the Proof of Service is a declaration of diligence regarding personal service, which states personal service was not effected because Clifton's "[r]esidence address was not known at the time of service." *Id.* at 2. The accuracy of this declaration is suspect given the evidence that Plaintiff's counsel corresponded with Ms. Clifton at her residence in December 2010. (Doc. 18 at 2) Moreover, the evidence submitted by Ms. Clifton, that by the time she was served at the business, the new bar owners had changed the name of the bar and had obtained a seller's permit for the business with the State Board of Equalization and, shortly thereafter, received a temporary liquor license for the location. (Doc. 24-1 at 1-2)

3

1  impression ... that she had not been served and contacted Plaintiff's counsel and requested any proof
2  of service if it had been effected and indicated a willingness to accept service of process if such
3  service had not previously been effectuated." *Id* at 4-5.  However, Mr. Noriega never received a
4  response from Plaintiff's counsel. *Id.*

5  Plaintiff asserts Ms. Clifton's failure to respond to the complaint rises to the level of
6  culpability.  Plaintiff asserts Ms. Clifton's excuse "amounts to a mistaken belief that, because she
7  was not personally served, she was not obligated to respond." (Doc. 22 at 4).  Plaintiff contends that
8  "even assuming it was reasonable for Defendant to believe she was not properly served, it was not
9  reasonable for her counsel to reach the same conclusion." *Id.* at 5.  Further, Plaintiff asserts that "by
10 counsel's admission, as early as May 20, 2011 he was aware of the existence of the default," and
11 there was "no reasonable explanation offered for [the] delay" of filing the motion to set aside three
12 months later. *Id.*  According to Plaintiff,"That defense counsel may have attempted to contact
13 Plaintiff in May or June 2011 does not justify failing to file the motion to set aside." *Id.* at 5.  The
14 Court disagrees.

15 In his declaration, Mr. Noriega stated he sent a certified letter to Plaintiff's counsel on April
16 19, 2011, in which he stated he "was authorized to accept service in the event they wished to pursue
17 the litigation." (Doc. 19 at 2).  On May, 20, 2011, Mr. Noriega contacted Mr. Riley's office again,
18 and learned default had been entered against his client. *Id.*  He requested a copy of proof of service
19 at that time, but one was not received. *Id.*  On June 2, 2011, Mr. Noriega sent a letter to Mr. Riley in
20 which he requested a copy of proof of service, and invited a stipulation to set aside the entry of
21 default. *Id.*  However, he never received a response from Mr. Riley. *Id.*

22 Based upon these facts, it seems clear that Mr. Noriega was not aware the lawsuit had been
23 instigated against his client until he learned of the entry of default on May 20, 2011, after which Mr.
24 Noriega sought a stipulation to set aside the entry of default on June 2, 2011.  The failure to respond
25 by Ms. Clifton does not demonstrate an intentional failure to appear in the action and answer
26 Plaintiff's complaint.  Ms. Clifton offers a "credible, good faith explanation" and there are no facts
27 demonstrating Clifton failed to answer with "any intention to take advantage of the opposing party,
28 interfere with judicial decision making, or otherwise manipulate the legal process." *See TCI Group,*

4

1  224 F.3d at 697. Consequently, the actions of Ms. Clifton and Mr. Noriega do not rise to the level of
2  culpability.

### B. Meritorious Defense

In seeking to vacate a default judgment, a defendant "must present specific facts that would constitute a defense." *TCI Group*, 244 F.3d at 700. However, the burden "is not extraordinarily heavy." *Id.* "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense . . ." *Mesle*, 5106 F.3d at 1094 (citing *TCI Group*, 244 F.3d at 700). Thus, a defense does not have to be proven by a preponderance of the evidence, but the moving party must establish "a factual or legal basis for the tendered defense." *Tri-Con't Leasing Corp., Inc. v. Zimmerman*, 485 F.Supp. 496, 497 (N.D. Cal. 1980).

Ms. Clifton asserts she has a meritorious defense because she sold the business to Mr. Andrade on August 10, 2009, and "[s]he played no role whatsoever in the management or operation of the business after it was sold to Mr. Andrade." (Doc. 17 at 3). According to Ms. Clifton, "Mr. Andrade merely paid [her] monthly toward the purchase price of the bar. After selling the bar to Mr. Andrade, [she] rarely visited the premises and then only for the purpose of collecting the purchase payments." (Doc. 18 at 1).

Plaintiff asserts that Ms. Clifton "fail[ed] to indicate how these facts constitute a defense," and it is not the Court's obligation "to infer the steps necessary to reach this conclusion." (Doc. 22 at 7) (citing *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003)). Further, Plaintiff argues Ms. Clifton's "contention is belied by her continuing appearance on the liquor license for The Playhouse . . . until July 21, 2010, which is several weeks after the Program broadcast." *Id.* at 7. According to Plaintiff, "The California Alcoholic Beverage Control ("ABC") laws make clear that a licensee is the owner and operator of the establishment." *Id* at 7-8 (citing *Harris v. Alcoholic Beverage Control Appeals Bd.*, 197 Cal. App. 2d 172 (1962); *Murro v. Alcohol Beverage Appeals Bd.*, 181 Cal. App. 2d 162 (1960)).

However, Plaintiff's cited authority do not support the assertion that the holder of a liquor license is the owner of an establishment. Rather, *Harris* and *Murro* stand for the proposition that "[t]he owner of a liquor license has the responsibility to see to it that the license is not used in

violation of law and as a matter of general law the knowledge and acts of the employee or agent are imputable to the licensee." *Murro*, 181 Cal. App. 2d at 164. As Ms. Clifton notes, the cases are distinguishable because in *Harris* and *Murro* "an employee or agent of the business owner was responsible for some wrongdoing," whereas here, "Mr. Andrade . . . was neither an employee nor agent for Defendant Clifton." (Doc. 24 at 3-4).

Although Plaintiff's cited authority suggests that the liquor license creates vicarious liability under certain circumstances, it does not mandate liability under 47 U.S.C. § 605 or § 553. A California court explained, "The rule is that [t]he licensee, if he elects to operate his business through employees, must be responsible to the licensing authority for their conduct in the exercise of his business. This rule follows from the nature of the activity of selling intoxicants." *Garcia v. Martin*, 192 Cal. App. 2d 786, 790 (1961) (internal quotation marks and citation omitted). The unlawful broadcast of a program is not an exercise of a liquor license. As a result, Plaintiff's reliance upon the fact that Ms. Clifton's name appeared on the liquor license at the time the Program was broadcast is insufficient to subject her to liability under 47 U.S.C. § 605 or § 553.

*Joe Hand Promotions, Inc. v. Alvarado*, 2011 U.S. Dist. LEXIS 47662 (E.D. Cal. May 3, 2011), was a case that is similar to the current one. In *Joe Hand*, Plaintiff sued the former bar owner and those who owned the bar at the operative time, based upon the rationale that the current owner was operating under the former owner's liquor license at the time the pirated program was displayed. In rejecting this rationale as a basis for imposing liability, the Court held,

> "Individual liability under the Cable Act requires that the individual authorize the underlying violations." *J&J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469, 473 (E.D. N.Y. 2009). "Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *291 Bar & Lounge*, 648 F.Supp.2d at 473 (quoting *Softel, Inc., v. Dragon Medical and Scientific Communications, Inc*., 118 F.3d 955, 971 (2d Cir.1997)).

*Id*. at *18-19. Thus, the Court concluded, "The Alvarados' names appearing on the liquor license is insufficient to subject them to liability under Joe Hand's federal communications claims." *Id*. at *20.

Here, just as in *Joe Hand*, Ms. Clifton has presented facts that she was not the owner at the time the Program was broadcast. Thus, she has presented facts that "would constitute a defense."

*See TCI Group*, 244 F.3d at 700.  As a result, this factor does not prohibit the Court from setting aside the entry of default.

### C.  Prejudice to Plaintiff

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701.  The relevant inquiry is "whether [the plaintiff's] ability to pursue is claim will be hindered. *Falk*, 739 F.2d at 463.  A delay "must result in tangible harm such as a loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion" for the setting aside of default to be prejudicial to the plaintiff.  *TCI Group*, 244 F.3d at 701 (citing *Thomspon v. American Home Assur.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).  Plaintiff asserts that "there is prejudice to Plaintiff as there is greater opportunity for fraud or collusion." (Doc. 22 at 10).  According to Plaintiff, "It is not difficult to imagine that if Mr. Andrade were to move to set aside, he could argue he was not responsible because Ms. Clifton was on the liquor license.  Each side would blame the other and effectively leave Plaintiff without a remedy." *Id*.  The Court declines to speculate arguments that may be presented by a defendant, or the outcome of the potential arguments.  Plaintiff has not presented facts to support the assertion that the defendants are likely to engage in fraudulent or collusive activity.  Likewise, there are no facts indicating Plaintiff's ability to pursue the claim will be hindered.  Therefore, Plaintiff would not be prejudiced if the entry of default is set aside by the Court.

### IV.  Conclusion

Defendant Ann Marie Clifton has shown good cause for the entry of default to be set aside.  She did not act culpably in failing to answer the complaint, she has a meritorious defense, and Plaintiff will not be prejudiced by default being set aside.  Therefore, the Court is within its discretion to set aside the entry of default.  *See Mendoza,* 783 F.2d at 945-46 (9th Cir. 1986).

Accordingly, **IT IS HEREBY ORDERED**:

1. The motion to set aside the entry of default against defendant Ann Marie Clifton is **GRANTED**; and

///

2. Defendant Ann Marie Clifton **SHALL** file her responsive pleading within 7 days of the date of service of this order.

IT IS SO ORDERED.

Dated:  **September 27, 2011**                                        **/s/ Jennifer L. Thurston**
                                                                      UNITED STATES MAGISTRATE JUDGE