IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | ) Case No.: 1:10-cv-02388 LJO JLT |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS ) DENYING PLAINTIFF'S MOTION FOR |
| v. | ) DEFAULT JUDGMENT |
| ANN MARIE CLIFTON and SERGIO ANDRADE, individually and doing business as PLAYHOUSE LOUNGE, | ) (Doc. 12) |
| Defendants. | ) |

Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") seeks the entry of default judgment against defendants Ann Marie Clifton and Sergio Andrade. (Doc. 12). The Court reviewed Plaintiff's motion and supporting documents, and heard oral argument on September 27, 2011.

Based upon the order granting defendant Ann Clifton's motion to set aside the entry of default filed concurrently herewith, the motion for default judgment as to defendant Ann Clifton is **DENIED** as **MOOT**. For the following reasons, the Court recommends Plaintiff's motion for default judgment as to defendant Sergio Andrade be **DENIED**.

**I.  Procedural History**

On December 27, 2010, Plaintiff filed its complaint against Ann Marie Clifton and Sergio Andrade, individually and doing business as Playhouse Lounge, alleging violations of the Communications Act of 1934 (47 U.S.C. § 605, *et seq.*), the Cable & Television Consumer

1

Protection and Competition Act of 1992 (47 U.S.C. § 533, *et seq.*) and the California Business and Professions Code § 17200, *et seq*. (Doc. 1 at 3-8). In addition, Plaintiff alleges the defendants are liable for wrongful conversion of property, arising under California State law. *Id.* at 6-7. Plaintiff alleges it possessed the exclusive rights to the nationwide commercial distribution of "Ulitmate Fighting Championship 108: Rashad Evans v. Thiago Silva" ("the Program"), televised on January 2, 2010. *Id.* at 3. Plaintiff's claims are based upon the defendants' alleged unlawful interception and broadcast of the Program.

The defendants failed to respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure. Pursuant to Fed.R.Civ.P. 55(a), default was entered against Sergio Andrade and Ann Marie Clifton on February 13, 2011. (Doc. 9). Plaintiff filed a motion for default judgment on July 14, 2011. (Doc. 12). On August 17, 2011, Ann Marie Clifton ("Clifton") appeared and moved to set aside default. (Docs. 14, 18). Plaintiff filed an opposition to the motion to set aside default on September 9, 2011 (Doc. 22), to which Defendant replied on September 20, 2011. (Doc. 24). As noted above, the Court granted Clifton's motion to set aside the entry of default on September 27, 2011. However, Mr. Andrade remains in default.

## II.  Legal Standards for Default Judgment

The Federal Rules of Civil Procedure issuance of default judgment. When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed.R.Civ.P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d

1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit opined,

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

### III.  Plaintiff's Factual Allegations

According to Plaintiff, defendants Ann Marie Clifton and Sergio Andrade were each "an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Playhouse Lounge..." (Doc. 1 at 3). Plaintiff alleges that by contract, it was granted exclusive domestic commercial distribution rights to the Program, and pursuant to that contract entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. *Id.* at 3-4. Plaintiff endeavors to "police [its] signals for the purpose of identifying and prosecuting establishments which pirate [the] programming," and "retained, at considerable expense, auditors and law enforcement personnel to detect and identify signal pirates." (Doc. 12-4 at 2).

Plaintiff alleges the defendants engaged in an act of signal piracy by broadcasting the Program in the establishment without purchasing a proper sublicense. (Doc. 1 at 4). For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and Professions Code. *Id.* at 3-8. However, in its application for default judgment, Plaintiff requested damages for the violation of 47 U.S.C. § 605 and conversion. (*See* Doc. 12). Therefore, the Court will only address these claims against defendant Sergio Andrade.

### IV.   Application of *Eitel* Factors

Applying the factors articulated by the Ninth Circuit in *Eitel* to the facts above, the Court finds factors weigh against granting Plaintiff's motion for default judgment.

A.  Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to a plaintiff militates in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177.  In general, where default has been entered against a defendant, a plaintiff has no other alternative by which to recover damages.  *Id.; J & J Sports Productions v. Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010). However, Plaintiff has an opportunity to litigate the case on its merits, and thus there is no other avenue by which Plaintiff may recover damages.  Therefore the Court finds Plaintiff would not be prejudiced if default judgment is not granted at this time.

B.  Merits of Plaintiff's claims and sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together.  *See J & J Sports Productions v. Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010).  The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175 (citing *Kleopping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

*Claim arising under 47 U.S.C. § 605*

The Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605, "prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 3.  In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person."  47 U.S.C. § 605(a).  Thus, the Communications Act claim requires Plaintiff to prove that it was the party aggrieved by Mr. Andrade's actions. 47 U.S.C. § 605(e)(3)(A).  A "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming."  47 U.S.C. § 605(d)(6).  In the Complaint, Plaintiff asserted it possessed the

exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 3). Consequently, Plaintiff was an aggrieved party under § 605.

In addition to establishing that it was a "person aggrieved," Plaintiff must show Mr. Andrade intercepted a wire or radio program and published it without Plaintiff's permission. 47 U.S.C. § 605(a). Plaintiff alleges that it is unable to "determine the precise means that the Defendants used to receive the Program" because neither defendant answered the Complaint. (Doc. 12-1 at 3). In spite of this, Plaintiff asserts, "Plaintiff should not be prejudiced because it cannot isolate the precise means of signal transmission the Defendants used . . ." *Id.* Similarly, in *Hernandez*, Plaintiff was unable to identify the nature of the transmission. As noted by the Court, Plaintiff's inability to allege the precise nature of the intercepted transmission in this case . . . raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *10. According to the Ninth Circuit, satellite signals are communications covered by 47 U.S.C. § 605(a). *Id.*, citing *DIRECTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008). Regardless of Plaintiff's inability to isolate the means of the signal transmission, Plaintiff submitted evidence that the Program was broadcast though the defendants did not purchase a license for the broadcast, because Plaintiff's investigator witnessed the match between Silva and Evans on two television sets in the establishment. (Doc. 12-3 at 2).

Therefore, Plaintiff has established the elements of a claim under the Communications Act, because Plaintiff was a party aggrieved, and Mr. Andrade intercepted the Program and published it without Plaintiff's permission.

*Conversion*

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Ca. Rptr. 3d 684 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Possession of the "[e]xclusive right to distribute a broadcast signal

to commercial establishments constitutes a 'right to possession of property' for purposes of conversion." *G & G Closed Circuit Events, LLC v. Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *10 (E.D. Cal. Aug. 2, 2010) (citing *Don King Prods./Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to have the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the exclusive distribution right, Plaintiff held a "right to possession of property." In addition, Plaintiff has shown that Mr. Andrade engaged in signal piracy by broadcasting the program without a sublicense. The rate sheet attached to the affidavit of Joe Hand, Jr., president of Joe Hand Promotions, establishes a sublicense cost $1,100 for an establishment such as the Playhouse Lounge with the capacity of up to 100 persons. Consequently, Plaintiff has established damages, and has stated a claim for conversion.

### C. Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff prays for statutory damages of $110,000 for the willful violation of 47 U.S.C. § 605. This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages. (Doc. 12-1 at 3).

Given the substantial amount of money at stake, this factor weighs against the entry of default judgment. *See, e.g., Joe Hand Promotions v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); *but see Hernandez*, 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against entry of default judgment). Notably, Plaintiff asserts that the proper sublicense to broadcast the Program cost $1,100, but Plaintiff feels nominal damages have proven insufficient to combat piracy, and Defendant should be required to pay the statutory maximum. *Id.* at 14-16. Thus, Plaintiff seems to concede that amount of damages requested is not tailored to the specific act of the broadcast at The Playhouse Lounge.

D. Possibility of dispute concerning material facts

The Court also considers the possibility of dispute as to any material facts in the case. Generally, where a defendant is in default there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, the defendant has not made any effort to challenge the Complaint or otherwise appear in this case. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. However, here there is a possibility of dispute concerning material facts because Ms. Clifton has appeared to defend herself in the action, and asserts she was not an owner of the establishment as defendant alleged. If this is established as true, it is likely that Ms. Clifton could not be held liable for the wrongful broadcast. On the other hand, if Plaintiff's allegations in the Complaint are true that Ms. Clifton was an owner, both defendants may be liable. Therefore, this factor weighs against granting default judgment.

E. Whether default was due to excusable neglect

Generally, the Court will consider whether Mr. Andrade's failure to answer is due to excusable neglect. *See Eitel,* 782 F.2d at 1472. Here, Mr. Andrade was properly served with the Summons and Complaint. Moreover, Mr. Andrade received Plaintiff's motion for default judgment. Given these circumstances, it is unlikely that Defendant's failure to answer, and the resulting defaults entered by the Clerk of Court, was a result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). As a result, this factor does not weigh against default judgment.

F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Mr. Andrade's failure to answer the Complaint makes a decision on the merits somewhat impractical. However, as indicated above, a defendant has appeared to defend in the action. Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits weighs against Plaintiff.

**V.   Default Judgment against a Single Defendant**

Plaintiff seeks judgment against Mr. Andrade, although another defendant remains to defend in the action. Therefore, the question arises as to whether the Court has the discretion to enter default judgment against less than all of the defendants. Under the Federal Rules of Civil Procedure, "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Therefore, the Court has discretion to deny entry of default judgment where a just reason exists to delay entry of a final judgment as to defendant Sergio Andrade. *Id.*; *see also Shanghai*, 194 F.Supp.2d at 1005.

The Supreme Court warned that "absurdity might follow" in instances where a court "can lawfully make a final decree against one defendant . . . while the cause was proceeding undetermined against the others." *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). The Ninth Circuit has summarized the *Frow* standard as follows: "[W]here a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *In re First T.D. & Investment*, 253 F.3d 520, 532 (9th Cir. 2001) (citing *Frow*, 82 U.S. at 554). This standard has been extended to parties who are "similarly situated." *Id.* The applicability of *Frow* "turns . . . on the key question fo whether under the theory of the complaint, liability of all the defendants must be uniform." *Shanghai*, 194 F.Supp.2d at 1008. In the Complaint, Plaintiff alleges both defendants are "an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Playhouse Lounge..." (Doc. 1 at 3). If each is a owner of the Playhouse Lounge, the liability of the defendants would be uniform, and the relief against the defendants must be consistent. Therefore, the alleged liability of the individual defendants overlaps with the liability as to the entity of the Playhouse Lounge.

When a case involves multiple parties or claims, "[c]onsiderations of fairness and sound administration of justice are also applicable to the entry of default judgment." *Johnson v. Cate*, 2009

U.S. Dist. LEXIS 57942, at * 2 (E.D. Cal. June 23, 2009). When granting default judgment, the Court would assess the amount of damages to be recovered by Plaintiff from Mr. Andrade for the wrongful broadcast, though Ms. Clifton remains to defend in the action. If Ms. Clifton were found liable as well, Plaintiff would be able to seek damages from Ms. Clifton–and thereby have double recovery for the single injury. However, "[i]t is a fundamental legal principle that an injured party is ordinarily entitled to only one satisfaction for each injury." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1230 (9th Cir. 1989) (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1236 (10th Cir. 1988)). Therefore, even if the *Eitel* factors had not weighed as heavily against Plaintiff, it is in the interest of justice to not enter default judgment while Ms. Clifton remains to defend. *See SEC v. Loomis*, 2010 U.S. Dist. LEXIS 87021, at *12-13 (E.D. Cal. Aug. 2010) (the Court found just reason for delay in entry of default judgment "given the overlapping nature of the claims as to different defendants").

## VI.  Findings and Recommendation

Given the issues discussed above, and the strong policy favoring decisions on the merits rather than the issuance of default judgment, the Court **RECOMMENDS** that Plaintiff's request for entry of default judgment against Sergio Andrade, individually and doing business as the Playhouse Lounge be **DENIED WITHOUT PREJUDICE**.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 27, 2011**                                                       **/s/ Jennifer L. Thurston**

1                                                                              UNITED STATES MAGISTRATE JUDGE